### AIRD v. GRACE LINE, Inc., et al.
### No. 7.

District Court, E. D. Pennsylvania.
Dec. 27, 1945.

Freedman, Landy & Lorry, and Charles Lakatos, all of Philadelphia, Pa., for libellant.

Krusen, Evans & Shaw, of Philadelphia, Pa., for respondents.

KALODNER, District Judge.

This is a libel in admiralty arising out of the alleged wrongful discharge of the libellant by the respondent. There is little question as to the facts, and the single issue involved is whether the respondent is liable for Aird's separation from his employment.

The facts are as follows: The libellant is a merchant seaman licensed as a radio operator, commercial, first class; his residence was, at the time of his employment, in Grants Pass, Ore. The libellant signed on the SS Walt Whitman on May 29, 1942. The evidence discloses that he was recruited for the job through the American Communications Association by the respondent, who operated the SS Walt Whitman under a General Agency Agreement with the War Shipping Administration. The Articles signed by the libellant on May 29, 1942, however, show that the U. S. Maritime Commission was the owner, and that the respondent was the "charterer". There is no doubt that, at the time of signing the Articles, the libellant was under the impression that the respondent was his employer, and that he was not advised otherwise prior to signing the Articles.

The SS Walt Whitman sailed from Portland, Ore., where Aird joined it, on June 1, 1942, and, after making various stops to load and discharge cargo, it arrived at the Army Base at Brooklyn, New York, on August 12, 1942.

On that day the Chief Mate came to Aird's quarters in the company of an Army officer and another man in a blue uniform, neither of whom were identified at the time of trial. The Chief Mate informed Aird that he would have to leave the ship, which demand was repeated by the Army officer. The latter kept Aird under surveillance until Aird collected his belongings, and then he, together with the other uniformed man escorted Aird to the gate of the Base.

On the following day Aird signed off under protest and was paid his wages in full up to and including August 12, 1942. In the column next to Aird's signature under the heading "Attestation of the Shipping Commissioner" appears the letters "N.I.", which signify "Naval Intelligence", apparently that being the basis for the "discharge".

The evidence further discloses that on the day the SS Walt Whitman arrived at the Army Base, the Captain of the vessel received a request from the Provost Marshal of the United States Army for the crew list, and the Chief Officer was dispatched with it. Shortly thereafter the Chief Officer, now deceased, returned accompanied by the two men previously re-

ferred to and delivered to the Walt Whitman's Captain a written communication relating to Aird. This order was on the stationery of the "Office of Superintendent, Army Transport Service", and reads as follows:

"1. By order of the Superintendent, Army Transport Service, the subject (John K. Aird) is to be immediately separated from employment, reason being given, 'Services no longer desired.'

"2. Subject will be picked up by the Master-at-Arms and kept under strict surveillance while he is collecting his effects and being paid off. He will be detained until a guard arrives to escort him out of the Port."

The order was signed for the Superintendent by an Intelligence Officer. A copy thereof was sent to the respondent, and also a letter advising the respondent that, "John K. Aird, radio operator aboard the SS Walt Whitman, has been removed from the ship. His services are not desired by the Army Transport Service." The entry in the official log of the vessel states,"August 13,·1942—New York—John K. Aird—Radio Operator was taken off vessel at Army Base, Brooklyn, August 12 about noon by U.S. Army Transport Service as unacceptable to them serving on the 'Walt Whitman'".

The reason for the action taken by the Army Transport Service remains unknown. The libellant has communicated with various agencies and officials to no avail, except to learn that, at the time the inquiry was made, his name was not listed among those unsuited· for service and that he could resume his occupation. The Captain of the Walt Whitman, testifying by deposition, stated that he knew of no reason for the action, and insofar as he was concerned, Aird's services while aboard ship were satisfactory.

The respondent has not attempted to prove that Aird's removal by the Transport Service was justified; its position is that the libellant was not discharged by it, and that in any·event, it cannot be held responsible, because it was not the owner, under the General Agency Agreement with The War Shipping Administration, or because Aird was removed by forces beyond its control.

The libellant contends that the respondent is liable as owner of the vessel "pro hæc vice", or regardless thereof, it is responsible on the "undisclosed principal" doctrine in the law of agency. Also it is urged that the respondent did in fact discharge the libellant and such discharge was not the result of the intervention of the sovereign. Relying on the dictionary definition of the word "discharge", it is claimed that the respondent, and no other party "discharged" Aird. Moreover, it is asserted that the libellant was not subject to the military jurisdiction, and that the order of the Army Transport Service did not constitute an exercise of such jurisdiction; hence, its action did not amount to intervention by the sovereign, and the respondent's discretion in the matter was not disturbed. Reliance is also placed on the fact that Aird was not arrested or tried by court martial.

A fair reading of the communications by the Army Transport Service to the Captain and to the respondent, and a consideration of the manner in which the "separation" was accomplished leave· the clear impression that neither the Captain of the Walt Whitman nor the respondent was responsible for, or had any discretion in, the separation of Aird from his employment. The plain fact is, in my opinion, not that he was discharged, indicating an affirmative act of discretion, but that he was removed, and that such removal was effected solely by the Army Transport Service for reasons known to it and to the Naval Intelligence.

Such reasons, I believe, were not the proper concern of the Captain or the respondent, and there was no alternative but to carry out the order given the Captain by the military in time of war.

The evidence, of course, is that the Chief Officer told Aird he would have to leave the ship, but under the circumstances it was a simple statement of the action taken by the Army Transport Service. That Aird was removed without say by the Captain or the respondent is manifest from the letter dated August 12, 1942, quoted above, which leads to the one conclusion that the Service, and not the respondent, removed him.

It is my opinion, therefore, that the libellant was not discharged, nor was he removed, by the respondent, its agents or employees, and consequently it cannot be held liable for the libellant's alleged losses arising from such removal, nor do I believe that the respondent may be held liable for the actions of the Army Transport Service and the Naval Intelligence, especially since the good faith of the Captain is not at-

tacked. The Schooner Marie De Ronde, D.C.S.D.N.Y., 1924 A.M.C. 1249, 1250; The Almagro, D.C.E.D.N.Y., 1925 A.M.C. 253.

Even if it be assumed that the Captain of the Walt Whitman "technically" did discharge Aird, his action was by order of the military.

Accordingly, upon the evidence and the arguments of counsel, I am of the opinion the respondent's motion to dismiss should be granted.

An Order may be entered in accordance herewith.